ESTES and others *v.* SPAIN and others.

*(District Court, N. D. Mississippi, W. D. March 3, 1884.)*

**DEED OF ASSIGNMENT BY INSOLVENT—VALIDITY—BURDEN OF PROOF.**
A deed of assignment *prima facie* good may be impeached for circumstances connected with, and conduct of the insolvent at and about the time of, the execution of it. In such cases the burden of proof is on the grantor or his beneficiaries under the assignment to show the validity of the deed.

In Equity.
*R. H. Taylor, J. G. Hall,* and *Luke Wright,* for complainants.
*Sullivan & Sullivan* and *E. Mayes,* for defendants.

HILL, J. This cause is submitted to the court upon bill, answers, exhibits, and proofs, from which the following facts appear:

S. H. Gunter, a merchant of the town of Sardis, in this state, was, on the twenty-fifth day of March, 1882, largely indebted to the complainants, and other merchants,—a number of whom are made defendants to the bill,—and on that day executed a deed of general assignment, purporting to convey all

of his property, real and personal, and all his notes, books of account, and other assets of every description, to S. G. Spain, as trustee, for the purpose of paying his debts, which, it is admitted on the face of the assignment, he was unable to pay in full, reserving, however, from the conveyance the property owned by him exempt by law from execution and sale, a schedule of which is given. Soon before, and about the same time, said Gunter executed another conveyance, conveying to J. B. Boothe, as trustee, certain real estate described therein, to secure and save harmless his sureties upon a note which he owed to the Sardis Bank; and at or about the same time said Gunter transferred and delivered to a number of his clerks and employes certain notes and accounts in payment of an alleged indebtedness to them; and shortly before this time, and at a time when, from the proof, he contemplated conveying away and dispossessing himself of all his visible means, he delivered to his wife the sum of $900 in payment of an alleged indebtedness to her for money which it is claimed by him he received from the estate of his wife's grandfather, and belonging to his wife, in the year 1858. Within a short time after these conveyances were made and money paid, defendants Bickham and Moore, and other creditors, sued out attachments in this court and caused the same to be levied by the marshal on the goods and assets in the hands and possession of said Spain, the trustee to whom they had been delivered under the assignment. Complainants, who are by far the largest creditors, who are preferred under the assignment, filed this bill, alleging, among other things, that the assignee was unwilling further to execute the trust conferred upon him by said assignment, and had abandoned the same; that the amount of the debts upon which attachments had been levied upon the property far exceeded its value, and that unless the trustee, or some one else interested, would give a claimant's bond, the property would be sold at a great sacrifice; and alleged that the assignment executed to said Spain was made in good faith, valid, and a binding security for the debt due to complainants; and prays that these attaching creditors be enjoined from proceeding further with their said attachment suit; that said deed of assignment be, by decree of this court, declared a valid assignment; and that a trustee or assignee be appointed to execute the trusts created by it, in the room and stead of said Spain, the assignee therein.

The answers deny that the assignment was made in good faith, and is a valid and legal transfer of the property and assets therein conveyed for the purposes expressed, as against the defendants, who were creditors of the assignor before the assignment was made, and deny that complainants are entitled to the relief prayed for in their bill. The question of the validity of the assignment is the main question to be determined. If there is any provision on the face of the assignment, or if there is any provision wanting in it, which renders it fraudulent and void in law, or if the facts as shown by the evidence show a purpose on the part of the granter to reserve a benefit to himself, or to hinder or delay his creditors, or any of them, in the collection of their debts, then the assignment must be declared fraudulent and void and the bill dismissed. As the debt due complainants is an antecedent debt, under the well-settled rule in this state, they or the assignee do not occupy the position of a *bona fide* purchaser without notice; so that if the assignment is fraudulent and void for any reason, as against the grantor, the beneficiaries under it can take nothing by it.

· The first question to ·be considered is, does the assignment on its face· contain any provision, or omit any provision, which, in its effect, will or may hinder and delay the grantor's creditors, or work an injury to them, not sanctioned by law? The assignment was evidently drawn by a skillful lawyer, with unusual care, and most of the provisions and omissions which are most usually relied upon and sustained in holding such conveyances fraudulent and void are in this assignment avoided, and at first view there would appear no objection to it, appearing on its face. The clause in the assignment providing for the disposition of the moneys arising from the collection of debts and the sale of property, after providing for the payment of the costs and expenses of executing the trust, and for the payment of the preferred creditors, provides that the supplies, if any, shall be paid *pro rata* to the unsecured creditors, whose names are given and the amount due to each, as stated in a schedule annexed to the assignment, and made part of it, and to any other creditors who are omitted therefrom, but does not mention a time in which these omitted creditors shall present their claims, nor the mode in which they shall be established. The assignee is directed to make the distribution with convenient speed, but fixes no limit of time in which it should be done. It is insisted by defendants' counsel that these omissions leave it to the discretion of the assignee, who is the assignor's confidential friend, former book-keeper, and wife's present partner, to postpone the distribution to an indefinite period, and to the delay and hinderance of the creditors in collecting their debts.

It has been held by the supreme court of this state in the case of *Mayer* v. *Shields & Mulhallan*, 59 Miss. 107, and by this court in the recent case of *Bickham & Moore* v. *Lake & Austin*, that, whenever, in a general deed of assignment by an insolvent debtor, it is required that something must be done by the debtor in order to participate in the funds, that a reasonable time, not too long nor too short, must be given, in which to do the thing required to be done, and that the want of such a provision will enable the assignee to unduly postpone the distribution to the hinderance and delay of the creditors, and thereby render the assignment in law fraudulent and void. In this case nothing is required of the omitted creditors to be done in order to participate in the funds to be distributed, and it is a matter of some doubt whether this defect alone renders the conveyance void; but these omissions are circumstances to be taken in connection with the proof in the cause to determine whether or not there existed fraud, in fact, in the execution of the assignment. The assignment further provides that if any property or debts have been inadvertently or by mistake omitted, the assignees shall place them upon the proper schedules; and this, it is claimed, renders the assignment void. The indebtedness mentioned means the debts due to the assignor, and not those due by him, and this provision was right and proper, and could not in any way prejudice the creditors; but the contrary.

Admitting the assignment to contain nothing on its face to invalidate it, the next question is, does the evidence show a fraudulent purpose in the grantor in making it? The proof abundantly shows that the grantor was hopelessly insolvent, and that for 12 days, by his own testimony, he knew it, and contemplated making a general assignment of all his property and assets, saving his exemptions. Hence, all he did subsequent to that time in the disposition of his property, assets, and money must be considered in determining this question. The proof shows that the goods and merchandise were sold mostly for cash, and at low rates. The proof further shows that subsequent to that time he paid his wife the sum of $900, which he claims he was advised by his counsel to do, in payment of a debt which he claims he owed her for money received from her grandfather's estate in Alabama in the year 1852. There is proof tending to show that his wife repeatedly took money from the drawer during this time, and that more goods than usual were taken to his residence from the store.

If all this was fair, it might have been explained by the testimony of Mrs. Gunter. She was present when her husband's deposition was taken; yet she was not examined. The rule is that the transactions between husband and wife are to be strictly scrutinized, and if there are even slight circumstances going to impeach the *bona fides* of the transaction, the burden of proof is thrown upon those claiming under it, to establish the fairness and validity of the transaction. Coupled with this is the rule that when suspicious circumstances are shown against the fairness of the transaction, and the party required to explain it, if fair, fails to produce proof to establish its fairness, the presumption is that the transaction was unfair, or that it is to be taken against its fairness. This rule applies to the facts of this case with no little force. Notwithstanding the assignor in his testimony refers to the records of the courts in Alabama and in this state, it was the duty of the complainants to produce the proof, and not that of the defendants to disprove it. As part of the same scheme to dispose of all his means, the assignor disposed of part in the payment of what was due his clerks. This he had a right to do, as well as to pay a *bona fide* debt due his wife. The only question in either case is, was the debt due and owing, and that received for it reasonable in value, and the payment made in good faith and free from fraud? The proof further shows that upon the same night that the assignment was executed, acknowledged, and delivered to the clerk for record, there was another deed executed by the assignor in the form of a deed of trust, for the declared purpose of securing his sureties upon a note due to the Bank of Sardis for $1,000. This deed being executed, evidently, as part of the same purpose and scheme of an entire disposition of his means by the assignor, and as the assignment provided for the payment of the same debt as a preferred claim, and also embraces the same property conveyed in the trust deed, subject to the provisions of the trust deed, the two instruments must be considered together, and the trust deed, under the circumstances of

their execution, must be considered as a partial assignment of the property of said Gunter, and controlled by the same rules of law applicable to the deed of assignment to Spain.

The liability of the sureties was on an antecedent debt to the bank. There was no new consideration to sustain it. The grantor was then hopelessly insolvent, and at the time of its execution was then in the act of transferring all of his property and assets of every description. The conveyance provided that the grantor should retain possession of the property until the maturity of the debt, which did not take place until December 1, 1882, and not until the beneficiaries in the trust deed should request the trustee to take possession of the property conveyed, and sell the same. Unless the property should become endangered as a security for the indebtedness, when the trustee might take possession of it and hold it until the debt and costs were paid, or the property was sold, but until possession should be demanded by the trustee, the grantor should hold the same subject to the trust deed. If this had been a general assignment, this reservation of the use of the property would unquestionably render it fraudulent in law. The assignment conveys the same property to secure the same debt, as a preferred debt, but subject to this trust deed. According to the trust deed a sale could not take place until the first of December, 1882, and not then until the trustee was notified in writing by the beneficiaries to take possession of and sell the property, unless there was danger of its being lost; and, as the property is real estate and immovable, it is difficult to see how this contingency could arise; and, in the mean time, the grantor was to hold and enjoy the use of the property. It is difficult to determine that this delay would not have the effect of hindering and delaying Gunter's other creditors; and were this all that is in the case, I am of opinion it would establish the fraudulent character of the conveyance. It will not do to say that the property might have been sold subject to the trust deed, for in that event the value of the interest sold would be too uncertain for the purchaser to pay any but a small sum.

But the complainants allege in their bill that the conveyance was made in good faith and free from all fraud, and claim affirmative relief. This allegation is denied under oath by the answer, and throws the burden of establishing the averment upon complainants. To grant to complainants all that they here claim, that is, that the conveyance is *prima facie* valid, and free from fraud; yet, when circumstances are proved casting a doubt upon the validity of the conveyance, the burden is thrown upon the complainants to establish its fairness and freedom from fraud. When all the circumstances already stated, and others shown from the proof, are considered, occuring before and at the time of the execution of this assignment, I am satisfied that the conveyance must be held as fraudulent and void, and that complainants are not entitled to any relief under their bill.

The result is that the injunction heretofore granted must be dissolved, and the bill dismissed, at complainants'. cost.